## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

| | |
|---|---|
| STATE OF KANSAS, *ET AL.* §§§§§ *Plaintiffs,* §§§§§ v. §§§§§ MERRICK GARLAND, *ET. AL.* §§§§§ *Defendants.* §§§§§§§§§§§§§§ | Civil Action No. 2:24-cv-88 |

## DECLARATION OF PHILLIP JOURNEY

I, Phillip Journey, declare as follows:

1. I am Phillip Journey. I am over the age of 18 and a U.S. citizen. I make this declaration in support of Plaintiffs' Motion for Stay / Preliminary Injunction. I have personal knowledge of the facts contained in this declaration unless otherwise stated. I could competently testify as to the contents of this Declaration if called upon to do so.

2. I currently serve as a state court judge in Kansas in Division 1, 18th Judicial District. I am also a shooting sports coach in rifle and pistol for 4-H and a master high-power rifle instructor for the division of civilian marksmanship. I am a law-abiding person, eligible to possess firearms under state and federal law.

3. I am a firearms hobbyist and enthusiast who maintains a large personal collection of firearms that includes handguns and firearms widely considered self-defense weapons. I have been a gun owner for over four decades and am an avid supporter of the right to keep and bear arms. I served on the board of the Kansas State Rifle Association for 24 years. While serving in the Kansas Senate from 2003 to 2008, I authored 30 bills including the right to carry concealed weapons and range protection. I have taught more than 5,000 Kansas youth as a hunter education instructor.

4. I attend at least 4-5 gun shows every year. At most of those gun shows I buy firearms and I sell firearms from my personal collection. I have bought and sold firearms both from licensed dealers and other private collectors and hobbyists like myself. I presently have a large personal collection of firearms that I have accumulated over many years and which I actively seek to enhance my collection on different themes by adding firearms that I find particularly interesting in terms of history, design and craftmanship. In the course of maintaining my collection, I sell firearms for various reasons, such as to trade up to a nicer model or better example of a historically significant model, free up funds or space for firearms that I would prefer to collect, or to get rid of firearms that I simply no longer wish to keep. It is my intention to continue buying and selling firearms, including self-defense weapons, at gun shows for my personal collection, and, to that end, I plan to attend a gun show within the next July, October and November 2024.

5. I am not a federal firearms licensee. Although I have occasionally bought and sold firearms through private sales, I have never been "engaged in the business" of dealing in firearms, as my sales of firearms have been made in connection with my firearm collection and hobby. While some of the firearms I've collected have increased in value,

I do not make any significant net profit from my hobby, nor is that my predominant purpose in collecting. I appreciate the craftsmanship, design and history of individual firearms, and accumulate them as relics of special interest, for noncommercial recreation, for personal enjoyment—and for self-defense.

6. I own firearms for their Constitutional purpose: as a "right of the people to keep and bear Arms," for traditional lawful self-defense. I keep some of my firearms primarily for personal protection, and I sometimes replace these firearms by selling and buying new models to effectively replace them.

7. Part of the tradition of gun ownership is the history of my state. Kansas enacted its Constitution in 1859. Kansas was admitted as a state in 1861 with the enactment of the Kansas/Nebraska Act. Pursuant to that law, the residents of Kansas voted it a free state. The Kansas framers ratified that the "people have a right to bear arms for their defense and security." This right had special importance prior to and during the Civil War, when guerilla pro-slavery "bushwackers" raided Kansas settlements and municipalities unprotected by federal troops. Later, my own home of Wichita became the destination of cowboys driving cattle up from Texas along the Chisholm Trail. Armed citizens were imperative to protect against highwaymen and other outlaws. Some of my collection includes firearms from that era including muzzleloading percussion and flintlock firearms, curios and relics from before 1898, my great-grandfather's handgun from when he practiced law and served in the Missouri house of representatives. It also contains firearms brought to the US by my grandfather in WWI and father in WWII, as well as firearms used in international and national competitions in the last 100 years, including Margaret Murdock's Anschutz Model 250 used in several international competition

events (including the Montreal Olympics), and the Finnish army's biathlon rifle as well as several firearms used in the commonwealth games. I own historic firearms designed for and/or used in the Boar War, WWI, WWII, Korea, Desert Storm, Desert Shield, etc. Major themes which comprise the bulk of my collection include competitive firearms for state, national and international competition. Like my ancestors, I keep and bear arms for my defense and security.

8. In 2010, Kansas amended its constitution so that the right to bear arms, Section 4 of the Kansas Bill of Rights, reads: "A person has the right to keep and bear arms for the defense of self, family, home and state, for lawful hunting and recreational use, and for any other lawful purpose." This Constitutional Amendment received support from 88.2% of the electorate. I also keep and bear arms for the defense of myself, my family, my home, and my state.

9. I am aware of the Final Rule that is at issue in this case and have reviewed it.

10. If the Final Rule goes into effect I believe that I will have to either give up selling firearms or register as a federal firearms licensee. It will immediately have this effect because of the burdens and multi-month application process associated with obtaining a license combined with my intention to attend gun shows in the coming months with the expectation of buying and/or selling firearms for and/or from my personal collection. I believe my firearms transactions have always been lawful under federal law. I wish to continue altering, improving, and, if ever necessary, having the option to liquidate my firearms collection, without becoming a federal firearms licensee, but the Final Rule makes portions of such lawful activity seem suspect and potentially actionable.

4

11. For example, various of the Final Rule's definitions are written so broadly that they cover conduct that Congress left lawful under the statute, or are written so narrowly that they eviscerate explicit statutory protections for personal collections such as mine. The Final Rule arbitrarily defines "collection" so narrowly that I am not even certain if my firearms collection still qualifies. It excludes firearms from someone's personal collection if they are weapons for self-defense. 89 Fed. Reg. 29039. The Final Rule also prohibits purchasing additional firearms for individuals "liquidating" all or part of their personal collection. *Id.* at 29092. Moreover, parts of the Final Rule are so convoluted, vague, and ambiguous that I (even as a lawyer myself) cannot determine what is prohibited versus what is allowed. I fear that the vague threats and ambiguous definitions in the Final Rule will be wielded as a weapon against me and persons like me, in order to threaten, coerce, and intimidate me into obtaining a license that federal law does not require.

12. I am aware of the requirements of a federal firearms licensee and they are burdensome for someone such as myself who buys, sells, and collects firearms as a hobby.

13. In my experience of attending hundreds of gun shows, I am aware of the impact the Final Rule will have on gun shows overall.

14. Based on the information available, the Final Rule in this case is expected to decrease the sale of unlicensed firearms dealers by 10%. 89 Fed. Reg. 29054. My experience leads me to believe that this 10% estimate is conservative, and sales could decrease by an even greater percentage.

15. The Final Rule will likely decrease the number of vendors that sell firearms at gun shows as those who are not federal firearms licensees (like me) will be less likely to attend, buy, or sell firearms. On the weekend of May 4, 2024, at a gun show in Wichita, Kansas, over

100 collectors and dealers sought my opinion on the effect of the rule. It could be described as a panic.

16. Gun collectors like myself know that ATF has a history of enticing hobbyists into transactions the agency dubiously regards to be criminal. This problem was the entire reason Congress passed the Firearm Owners Protection Act, which has relevant language that was only slightly revised by Bipartisan Safer Communities of 2022. Every potential buyer or seller of firearms will fear being labeled as a "dealer" that is "engaged in the business" of dealing firearms, which could result in civil actions brought against them, or even criminal charges and dangerous raids by federal officials. *See, e.g.*, Benjamin Hardy et al., *Illegal Guns Sales Led to Fatal ATF Raid on Airport Director Malinowski's Home, Affidavit Says*, ARK. TIMES (Mar. 21, 2024), https://arktimes.com/arkansas-blog/2024/03/21/judge-unseals-documents-in-malinowski-case (reporting on an Arkansas airport executive accused of "engaging in the business," who died March 21, 2024 after being shot in the head during a dawn raid of his house by ATF agents).

17. In light of this uncertainty, imagine that I was offering to sell a modern revolver from my collection because I've acquired a superior handgun for my own use. If I were approached by a fellow hobbyist who instead wanted to buy a hunting rifle, would it be lawful for me to sell him a rifle from my collection? If I do not immediately reject the idea, but tell him I have to think about what I might be willing to part with, have I offered to procure him a gun under the rules? If I happen to own an unwanted rifle, do I become a dealer if I suggest a fair market price? Does it matter whether I am selling the rifle for more than I bought it for years ago? Should I keep purchase records to show a loss? The proposed rule suggests that even tracking this information might make me

6

"presumptively" a for-profit dealer. If the rifle still bears the price sticker from when I bought it, would that be sufficient for running afoul the rule? Would I have to prove how I intended to spend the money from the sale—that it was being used to enhance another part of my collection? How could I do that, given that money is fungible? Even if I kept a separate account for this purpose, that itself could also be "presumptive" evidence I am a dealer. Suppose my wife bought the rifle because she though it would go up in value and could be resold for a profit, am I breaking the rules if, unknown to me, my sale does cause a household profit on that rifle? And if I happen to know—and could somehow prove—that I would be selling the rifle for a loss and I have no pecuniary purpose, how could I know what the buyer's intent it? Is he planning to re-sell the rifle for profit because he knows someone else is specifically looking for the model? How could the buyer know what *my* intent is?

18. Returning to selling the modern revolver, would that even be permitted under the rules? While the rules draw a narrow exception for selling from a collection, self-defense weapons do not clearly fit within it. Would it matter how I used the revolver before selling it—or how the buyer intended to use it? Would I have to prove that money from selling the revolver only went toward a new "self-defense" weapon? How? If I sell the firearm by delivering it to a Federal Firearms Licensee so that the buyers background check is run, is that a defense? It is not included in statute or the rule.

19. Now say the collector buys my modern revolver and asks me if I have any historically-significant firearms I might sell. Have I run afoul the rules if I respond "yes"? Could this itself that be considered an offer "to be a source of additional firearms for resale" as ATF has defined it? How could I rebut the presumption that the rules suggest I am

7

engaged in business? Would I have to document in advance which firearms I'm willing to sell in order to reach the narrow exception for "liquidation" allowed by the rules? How could I even document such a thing? Do I lose any hope of safe harbor by switching from a potential "self-defense" firearm into liquidating part of my collection? And if I use money from a "self-defense" sale to buy a collectable firearm—or vice versa—have I run afoul the rules? Even if the purchase happens months later?

20. The potential consequences *after* a sale are also vague and potentially dire. For example, if I buy later the same model after selling a particular firearm, have I "restocked" it? Even if I sold the earlier firearm years earlier and forgot I'd ever even owned it? In fact, if I buy *any* firearm after liquidating part of my collection am I "restocking"? That sounds absurd, because it would imply that one could never privately buy another gun after a partial liquidation, but the rules do not clearly allow it. I have no reasonable notice of what *is* allowed under the rules, and extremely narrow exemplary exceptions suggest that ATF thinks virtually no private sale should be permitted under the rules.

21. However you cut it, the transaction becomes risky from both my perspective and the buyer's perspective, and the penalty for miscalculating the risk prosecution with the result prison. Private non-commercial transactions cannot easily occur under such rules—if at all.

22. And the rules apply to more than sales. They could apply to simply loaning a rifle to someone, if the use could be deemed commercial. Suppose a friend of mine borrows a rifle for deer season, then sells the venison (deer meat) from his quarry to a friend or neighbor. Have I broken the rules because I am not a dealer and have unwittingly loaned a firearm for a colorable commercial purpose?

23. I feel certain this will likely lead to a decrease in attendance at gun shows as fewer vendors will decrease the options available, including my personal options for selling my firearms, and reduce public interest in gun shows, reducing the avenues that lawful hobbyists like me have to expand their collection or sell unwanted parts of it. The universe of those purchasing opportunities will shrink also as the number of potential sellers is diminished.

24. I do not want to give up selling firearms at gun shows from my personal collection, but this Final Rule makes me believe that I will potentially be subject to civil, administrative, and possibly criminal penalties if I do, even if using a federally licensed dealer.

25. This belief is reinforced by the Final Rule providing that "even a single firearm transaction or offer to engage in a transaction" may require a federal firearms license. 89 Fed. Reg at 29091.

26. Further the declarant sayeth naught.

I declare under penalty of perjury under the laws of the United States of America and the State of Kansas that the foregoing is true and correct.

_____
Phillip B. Journey