IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

| | |
|---|---|
| STATE OF KANSAS, *et al.* )<br>)<br>  *Plaintiffs,* )<br>)<br>v. )<br>)<br>MERRICK B. GARLAND, in his official )<br>capacity, as Attorney General of the United )<br>States, *et al.* )<br>)<br>  *Defendants.* )<br>)<br>)<br>)<br>) | Civil Action No. 2:24-CV-88-JM |

---

SWORN DECLARATION OF EDDIE EDWARDS

---

Pursuant to 28 U.S.C. § 1746, I, Eddie Edwards, duly affirm under penalty of perjury as follows:

1. I am over 18 years of age, have personal knowledge of the matters set forth herein, and am competent to make this Declaration. The facts contained in this Sworn Declaration are true and accurate and are of my personal knowledge.

2. My name is Eddie Edwards, and I serve as the Assistant Commissioner of the New Hampshire Department of Safety. I have served in this capacity since March 3, 2021. My responsibilities include overseeing the Department's personnel management, the Division of State

Police, the Fire Marshal's Office, the Bureau of Hearings, Homeland Security and Emergency Management, and highway safety initiatives.

3. After reading ATF's proposed rule change, titled, Definition of "Engaged in the Business as a Dealer in Firearms," 88 Fed Reg. 61993 (Sept. 8, 2023), I state the following regarding the New Hampshire Department of Safety:

4. The following paragraph is a correct description of New Hampshire's role in processing background checks for firearms purchases:

> New Hampshire law permits the New Hampshire Department of Safety ("NHDOS") to become a point of contact for the federal government for the purposes of the National Instant Criminal Background Check System (NICS). N.H. Rev. Stat. Ann. § 159-D:1. Since approximately 1999, NHDOS has served as a partial point of contact in that a federal firearms licensee contacts the state for purchases of handgun, the frame or receiver of any firearm, firearm mufflers, and firearm silencers, and contacts the FBI for long guns, rifles and shotgun purchases. The Permits and Licensing Unit of the Division of State Police fulfills the point of contact ("POC") role. It must access the NICS as part of the background check process and search the New Hampshire Criminal History Record database established under RSA 106-B:14. In addition, it must conduct a review of a list of individuals produced by the New Hampshire Judiciary who currently have a domestic violence protection orders issued against him or her. This review is conducted because state law prohibits firearm sales to individuals who are under an *ex parte* domestic violence protective order; federal law contains a different standard. *Compare* N.H. Rev. Stat. Ann. § 173-B:4, II *with* 18 U.S.C. § 922(g)(8). Thus, maintaining the NHDOS's current practice as a POC not only benefits public safety in New Hampshire, but ensures the continued enforcement of RSA 173-B:4, II. The Final Rule expects an increase in background checks. This increase will likely result in an increase in administrative costs and resources for Plaintiff New Hampshire.

5. Attached as Exhibit A is a true and accurate copy of a memorandum dated January 6, 2021, describing the procedure for denial or delay to purchase pursuant to R.S.A. § 159-D:1.

6. By expanding the transactions under the Final Rule, the Department, and more specifically the Permits and Licensing Unit of the Division of State Police, will expend additional

resources and personnel to determine how to implement this expansion. Further, the increase in the number of background checks will increase the cost of administration in that the number additional resources and personnel will be needed to conduct the additional checks.

    7.    I declare under penalty of perjury that the foregoing is true and correct.

/s/ *Eddie Edwards*
Eddie Edwards
Assistant Commissioner, New Hampshire
Department of Safety

Dated: May 3, 2024

# Exhibit A

Memorandum

To: Executive Councilor David Wheeler
From: Commissioner Robert L. Quinn
Date: 1/6/21
Re: Procedure for Appeal of Denial or Delay to Purchase Pursuant to RSA159-D

---

Councilor,

Per your request, I am providing you with an overview of the current laws applicable to appeals for the denial or delay to purchase, pursuant to RSA 159-D.

The State of New Hampshire is a designated partial Point of Contact ("POC") for the purposes of conducting criminal background checks on individuals seeking to purchase handguns in the state. See **RSA 159-D.**[1] In the event that the background check results in a denial of a transaction, a person wishing to challenge or contest this result must adhere to the applicable federal laws and regulations governing this process. See **18 U.S.C.A. § 922; 18 U.S.C.A. § 925A; 28 C.F.R. § 25.10.**

Pursuant to **28 C.F.R. § 25.10**:

1. The Federal Firearms Licensee ("FFL") that receives notice of a denial may, upon request by the person seeking to purchase the firearm, provide the person with the address of the "denying agency," and the unique transaction number (NICS Transaction Number ("NTN") or State Assigned Transaction Number ("STN")) associated with the NICS background check. **28 C.F.R. § 25.10 (a).** The "denying agency" is either the FBI or the state or local law enforcement agency serving as a POC. *Id.* In New Hampshire, this means that for denied handgun transactions, the "denying agency" would be the Department of Safety ("DOS"), for all other firearm purchases the "denying agency" would be the FBI.

   An individual may then request the reason for the denial from the denying agency. According to federal regulations, the request for the reason of the denial must be made in writing to the denying agency. *Id.* However, POCs may waive this requirement. *Id.*

   The denying agency then has five business days to respond to the individual with the reason for the denial. **28 C.F.R. § 25.10 (b).** The response from the denying agency should indicate whether additional information or documents are required to support an appeal, such as fingerprints in appeals involving questions of identity (i.e., a claim that the record in question does not pertain to the individual who was denied). *Id.*

---

[1] The federal government continues to conduct the background checks for long guns.

1

2. If the individual wishes to challenge the accuracy of the record upon which the denial is based, or if the individual wishes to assert that his or her rights to possess a firearm have been restored, he or she may make application first to the denying agency, i.e. either the FBI or to the DOS, depending on what type of firearm is involved in the transaction. **28 C.F.R. § 25.10 (c)**

"If the denying agency is unable to resolve the appeal, the denying agency will so notify the individual and shall provide the name and address of the agency that originated the document containing the information upon which the denial was based." *Id.*

"The individual may then apply for correction of the record directly to the agency from which it originated." *Id.*

If the record is corrected as a result of the appeal to the originating agency, the individual may notify the denying agency, which will, in turn, verify the record correction with the originating agency (assuming the originating agency has not already notified the denying agency of the correction) and take all necessary steps to correct the record in the NICS. *Id.*

As an alternative to the above procedure where a POC was the denying agency, the individual may elect to direct his or her challenge to the accuracy of the record, in writing, to the FBI, which has the authority to "investigate the matter by contacting the POC that denied the transaction or the data source." **28 C.F.R. § 25.20 (d)**. The FBI will consider both information obtained from both the individual and the POC. *Id.* If the record is corrected as a result of the challenge, the FBI notifies the individual, corrects the erroneous information in the NICS, and gives notice of the error to any Federal department or agency or any state that was the source of such erroneous records. *Id.*

If the originating record that resulted in the denial is a New Hampshire criminal history record, Saf-C 5703.12 also sets forth the procedure for correcting that record.

A person making a challenge shall identify that portion of his or her record which he or she believes to be inaccurate or incorrect, and shall also give a correct version of his or her record with an explanation of the reason that he or she believes his/her version to be correct. **Saf-C 5703.12(c)**

Within 30 days of receipt of challenge, the criminal records unit shall review the records and contact the law enforcement agency or court which submitted the record to compare the information to determine whether the challenge is valid. If the challenge is valid, which means there is a discrepancy between the information submitted and the information maintained by the law enforcement agency or court, the record shall be corrected and the person and appropriate criminal justice agency shall be notified. If the challenge is invalid, the person making the challenge will be so informed. **Saf-C 5703.12 (d)**

3. Upon receipt of notice of the correction of a contested record from the originating agency, the FBI or the agency that contributed the record shall correct the data in the

NICS and the denying agency shall provide a written confirmation of the correction of the erroneous data to the individual for presentation to the FFL. **28 C.F.R. § 25.10 (e).**

If the appeal of a contested record is successful and thirty (30) days or less have transpired since the initial check, and there are no other disqualifying records upon which the denial was based, the NICS will communicate a "Proceed" response to the FFL. *Id.*

If the appeal is successful and more than thirty (30) days have transpired since the initial check, the FFL must recheck the NICS before allowing the sale to continue. *Id.*

In cases where multiple disqualifying records are the basis for the denial, the individual must pursue a correction for **each** record. *Id.*

4. An individual may also contest the accuracy or validity of a disqualifying record by bringing an action against the state or political subdivision responsible for providing the contested information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the contested information be corrected or that the firearm transfer be approved. **28 C.F.R. § 25.10 (f)**; see also **18 U.S.C.A. 925A.**

5. An individual may provide written consent to the FBI to maintain information about himself or herself in a Voluntary Appeal File to be established by the FBI and checked by the NICS for the purpose of preventing the future erroneous denial or extended delay by the NICS of a firearm transfer. **28 C.F.R. § 25.20 (g).**

Such file shall be used only by the NICS for this purpose. *Id.*

The FBI shall remove all information in the Voluntary Appeal File pertaining to an individual upon receipt of a written request by that individual. However, the FBI may retain such information contained in the Voluntary Appeal File as long as needed to pursue cases of identified misuse of the system. *Id.*

If the FBI finds a disqualifying record on the individual after his or her entry into the Voluntary Appeal File, the FBI may remove the individual's information from the file. *Id.*

---

**Relevant Statutes, Rules and Case Law**

**State Law**

3

**RSA 159-D:1 Sale of Firearms; Criminal History Record and Protective Order Check. –** The department of safety may become the point of contact for the federal government for the purposes of the National Instant Criminal Background Check System (NICS).

**RSA 159-D:2 Confidentiality. –**
I. If the department of safety conducts criminal background checks under RSA 159-D:1, any records containing information pertaining to a potential buyer or transferee who is not found to be prohibited from receipt or transfer of a firearm by reason of state or federal law, which are created by the department of safety to conduct the criminal background check, shall be confidential and may not be disclosed by the department or any officers or employees to any person or to another agency. The department shall destroy any such records after it communicates the corresponding approval number to the licensee and, in any event, such records shall be destroyed within one day after the day of the receipt of the licensee's request.
II. The department shall retain records containing any information pertaining to a potential buyer or transferee who is prohibited from receipt or transfer of a firearm for 3 years.
III. Notwithstanding the provisions of this section, the department may maintain only a log of dates of requests for criminal background checks and unique approval numbers corresponding to such dates for an indefinite period.
IV. Nothing in this section shall be construed to allow the department to maintain records containing the names of licensees who receive unique approval numbers or to maintain records of firearm transactions, including the names or other identification of licensees and potential buyers or transferees, including persons not otherwise prohibited by law from the receipt or possession of firearms.

**RSA 159-D:3 Penalties for Attempts to Purchase Firearms Illegally. –** A person who completes and signs an application for purchase of a firearm and who knows that such purchase is illegal because he or she is subject to a protective order shall be guilty of a class A misdemeanor for a first offense and a class B felony for a second or subsequent offense.

**Saf-C 5703.12 Procedure for Correcting a CHRI.**
   (a) Persons or their attorneys desiring access to their CHRI for the purpose of challenge or correction shall appear at the central repository.
   (b) A copy shall be provided to a person if after review he or she indicates he or she needs the copy to pursue the challenge.
   (c) Any person making a challenge shall identify that portion of his/her CHRI which he or she believes to be inaccurate or incorrect, and shall also give a correct version of his or her record with an explanation of the reason that he or she believes his/her version to be correct.
   (d) The director shall take the following actions within 30 days of receipt of challenge:
(1) Review the records and contact the law enforcement agency or court which submitted the record to compare the information to determine whether the challenge is valid;
(2) If the challenge is valid, which means there is a discrepancy between the information submitted and the information maintained by the law enforcement agency or court, the record shall be corrected and the person and appropriate CJAs shall be notified; and
(3) If the challenge is invalid, the person shall be so informed.
   (e) When a record has been corrected, the division shall notify all non-criminal justice agencies, to whom the data has been disseminated in the last year, of the correction.

4

(f) The person shall be entitled to review the information that records the facts, dates, and results of each formal stage of the criminal justice process through which he passes, to ensure that all such steps are completely and accurately recorded.

## Federal Law

**18 U.S.C.A. § 925A**
**§ 925A. Remedy for erroneous denial of firearm**
Any person denied a firearm pursuant to subsection (s) or (t) of section 922--
**(1)** due to the provision of erroneous information relating to the person by any State or political subdivision thereof, or by the national instant criminal background check system established under section 103 of the Brady Handgun Violence Prevention Act; or
**(2)** who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922, may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be. In any action under this section, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs.

**28 C.F.R. § 25.10**
**§ 25.10 Correction of erroneous system information.**

(a) An individual may request the reason for the denial from the agency that conducted the check of the NICS (the "denying agency," which will be either the FBI or the state or local law enforcement agency serving as a POC). The FFL will provide to the denied individual the name and address of the denying agency and the unique transaction number (NTN or STN) associated with the NICS background check.
The request for the reason for the denial must be made in writing to the denying agency. (POCs at their discretion may waive the requirement for a written request.)
(b) The denying agency will respond to the individual with the reasons for the denial within five business days of its receipt of the individual's request. The response should indicate whether additional information or documents are required to support an appeal, such as fingerprints in appeals involving questions of identity (i.e., a claim that the record in question does not pertain to the individual who was denied).
(c) If the individual wishes to challenge the accuracy of the record upon which the denial is based, or if the individual wishes to assert that his or her rights to possess a firearm have been restored, he or she may make application first to the denying agency, i.e., either the FBI or the POC. If the denying agency is unable to resolve the appeal, the denying agency will so notify the individual and shall provide the name and address of the agency that originated the document containing the information upon which the denial was based. The individual may then apply for correction of the record directly to the agency from which it originated. If the record is corrected as a result of the appeal to the originating agency, the individual may so notify the denying

5

agency, which will, in turn, verify the record correction with the originating agency (assuming the originating agency has not already notified the denying agency of the correction) and take all necessary steps to correct the record in the NICS.

(d) As an alternative to the above procedure where a POC was the denying agency, the individual may elect to direct his or her challenge to the accuracy of the record, in writing, to the FBI, NICS Operations Center, Criminal Justice Information Services Division, 1000 Custer Hollow Road, Module C–3, Clarksburg, West Virginia 26306–0147. Upon receipt of the information, the FBI will investigate the matter by contacting the POC that denied the transaction or the data source. The FBI will request the POC or the data source to verify that the record in question pertains to the individual who was denied, or to verify or correct the challenged record. The FBI will consider the information it receives from the individual and the response it receives from the POC or the data source.

If the record is corrected as a result of the challenge, the FBI shall so notify the individual, correct the erroneous information in the NICS, and give notice of the error to any Federal department or agency or any state that was the source of such erroneous records.

(e) Upon receipt of notice of the correction of a contested record from the originating agency, the FBI or the agency that contributed the record shall correct the data in the NICS and the denying agency shall provide a written confirmation of the correction of the erroneous data to the individual for presentation to the FFL. If the appeal of a contested record is successful and thirty (30) days or less have transpired since the initial check, and there are no other disqualifying records upon which the denial was based, the NICS will communicate a "Proceed" response to the FFL. If the appeal is successful and more than thirty (30) days have transpired since the initial check, the FFL must recheck the NICS before allowing the sale to continue. In cases where multiple disqualifying records are the basis for the denial, the individual must pursue a correction for each record.

(f) An individual may also contest the accuracy or validity of a disqualifying record by bringing an action against the state or political subdivision responsible for providing the contested information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the contested information be corrected or that the firearm transfer be approved.

(g) An individual may provide written consent to the FBI to maintain information about himself or herself in a Voluntary Appeal File to be established by the FBI and checked by the NICS for the purpose of preventing the future erroneous denial or extended delay by the NICS of a firearm transfer. Such file shall be used only by the NICS for this purpose. The FBI shall remove all information in the Voluntary Appeal File pertaining to an individual upon receipt of a written request by that individual. However, the FBI may retain such information contained in the Voluntary Appeal File as long as needed to pursue cases of identified misuse of the system. If the FBI finds a disqualifying record on the individual after his or her entry into the Voluntary Appeal File, the FBI may remove the individual's information from the file.

**18 U.S.C.A. § 922**

(s)(1) Beginning on the date that is 90 days after the date of enactment of this subsection and ending on the day before the date that is 60 months after such date of enactment, it shall be unlawful for any licensed importer, licensed manufacturer, or licensed dealer to sell, deliver, or

transfer a handgun (other than the return of a handgun to the person from whom it was received) to an individual who is not licensed under section 923, unless--
(A) after the most recent proposal of such transfer by the transferee--
(i) the transferor has--
(I) received from the transferee a statement of the transferee containing the information described in paragraph (3);
(II) verified the identity of the transferee by examining the identification document presented;
(III) within 1 day after the transferee furnishes the statement, provided notice of the contents of the statement to the chief law enforcement officer of the place of residence of the transferee; and
(IV) within 1 day after the transferee furnishes the statement, transmitted a copy of the statement to the chief law enforcement officer of the place of residence of the transferee; and
(ii)(I) 5 business days (meaning days on which State offices are open) have elapsed from the date the transferor furnished notice of the contents of the statement to the chief law enforcement officer, during which period the transferor has not received information from the chief law enforcement officer that receipt or possession of the handgun by the transferee would be in violation of Federal, State, or local law; or
(II) the transferor has received notice from the chief law enforcement officer that the officer has no information indicating that receipt or possession of the handgun by the transferee would violate Federal, State, or local law;
(B) the transferee has presented to the transferor a written statement, issued by the chief law enforcement officer of the place of residence of the transferee during the 10-day period ending on the date of the most recent proposal of such transfer by the transferee, stating that the transferee requires access to a handgun because of a threat to the life of the transferee or of any member of the household of the transferee;
(C)(i) the transferee has presented to the transferor a permit that--
(I) allows the transferee to possess or acquire a handgun; and
(II) was issued not more than 5 years earlier by the State in which the transfer is to take place; and
(ii) the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a handgun by the transferee would be in violation of the law;
(D) the law of the State requires that, before any licensed importer, licensed manufacturer, or licensed dealer completes the transfer of a handgun to an individual who is not licensed under section 923, an authorized government official verify that the information available to such official does not indicate that possession of a handgun by the transferee would be in violation of law;
(E) the Attorney General has approved the transfer under section 5812 of the Internal Revenue Code of 1986; or
(F) on application of the transferor, the Attorney General has certified that compliance with subparagraph (A)(i)(III) is impracticable because--
(i) the ratio of the number of law enforcement officers of the State in which the transfer is to occur to the number of square miles of land area of the State does not exceed 0.0025;
(ii) the business premises of the transferor at which the transfer is to occur are extremely remote in relation to the chief law enforcement officer; and
(iii) there is an absence of telecommunications facilities in the geographical area in which the business premises are located.

(2) A chief law enforcement officer to whom a transferor has provided notice pursuant to paragraph (1)(A)(i)(III) shall make a reasonable effort to ascertain within 5 business days whether receipt or possession would be in violation of the law, including research in whatever State and local recordkeeping systems are available and in a national system designated by the Attorney General.
(3) The statement referred to in paragraph (1)(A)(i)(I) shall contain only--
(A) the name, address, and date of birth appearing on a valid identification document (as defined in section 1028(d)(1)) of the transferee containing a photograph of the transferee and a description of the identification used;
(B) a statement that the transferee--
(i) is not under indictment for, and has not been convicted in any court of, a crime punishable by imprisonment for a term exceeding 1 year, and has not been convicted in any court of a misdemeanor crime of domestic violence;
(ii) is not a fugitive from justice;
(iii) is not an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act);
(iv) has not been adjudicated as a mental defective or been committed to a mental institution;
(v) is not an alien who--
(I) is illegally or unlawfully in the United States; or
(II) subject to subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26)));
(vi) has not been discharged from the Armed Forces under dishonorable conditions; and
(vii) is not a person who, having been a citizen of the United States, has renounced such citizenship;
(C) the date the statement is made; and
(D) notice that the transferee intends to obtain a handgun from the transferor.
(4) Any transferor of a handgun who, after such transfer, receives a report from a chief law enforcement officer containing information that receipt or possession of the handgun by the transferee violates Federal, State, or local law shall, within 1 business day after receipt of such request, communicate any information related to the transfer that the transferor has about the transfer and the transferee to--
(A) the chief law enforcement officer of the place of business of the transferor; and
(B) the chief law enforcement officer of the place of residence of the transferee.
(5) Any transferor who receives information, not otherwise available to the public, in a report under this subsection shall not disclose such information except to the transferee, to law enforcement authorities, or pursuant to the direction of a court of law.
(6)(A) Any transferor who sells, delivers, or otherwise transfers a handgun to a transferee shall retain the copy of the statement of the transferee with respect to the handgun transaction, and shall retain evidence that the transferor has complied with subclauses (III) and (IV) of paragraph (1)(A)(i) with respect to the statement.
(B) Unless the chief law enforcement officer to whom a statement is transmitted under paragraph (1)(A)(i)(IV) determines that a transaction would violate Federal, State, or local law--
(i) the officer shall, within 20 business days after the date the transferee made the statement on the basis of which the notice was provided, destroy the statement, any record containing

8

information derived from the statement, and any record created as a result of the notice required by paragraph (1)(A)(i)(III);
**(ii)** the information contained in the statement shall not be conveyed to any person except a person who has a need to know in order to carry out this subsection; and
**(iii)** the information contained in the statement shall not be used for any purpose other than to carry out this subsection.
**(C)** If a chief law enforcement officer determines that an individual is ineligible to receive a handgun and the individual requests the officer to provide the reason for such determination, the officer shall provide such reasons to the individual in writing within 20 business days after receipt of the request.
**(7)** A chief law enforcement officer or other person responsible for providing criminal history background information pursuant to this subsection shall not be liable in an action at law for damages--
**(A)** for failure to prevent the sale or transfer of a handgun to a person whose receipt or possession of the handgun is unlawful under this section; or
**(B)** for preventing such a sale or transfer to a person who may lawfully receive or possess a handgun.
**(8)** For purposes of this subsection, the term "chief law enforcement officer" means the chief of police, the sheriff, or an equivalent officer or the designee of any such individual.
**(9)** The Attorney General shall take necessary actions to ensure that the provisions of this subsection are published and disseminated to licensed dealers, law enforcement officials, and the public.

18 U.S.C.A. § 922 (West)

**(t)(1)** Beginning on the date that is 30 days after the Attorney General notifies licensees under section 103(d) of the Brady Handgun Violence Prevention Act that the national instant criminal background check system is established, a licensed importer, licensed manufacturer, or licensed dealer shall not transfer a firearm to any other person who is not licensed under this chapter, unless--
**(A)** before the completion of the transfer, the licensee contacts the national instant criminal background check system established under section 103 of that Act;
**(B)(i)** the system provides the licensee with a unique identification number; or
**(ii)** 3 business days (meaning a day on which State offices are open) have elapsed since the licensee contacted the system, and the system has not notified the licensee that the receipt of a firearm by such other person would violate subsection (g) or (n) of this section; and
**(C)** the transferor has verified the identity of the transferee by examining a valid identification document (as defined in section 1028(d) of this title) of the transferee containing a photograph of the transferee.
**(2)** If receipt of a firearm would not violate subsection (g) or (n) or State law, the system shall--
**(A)** assign a unique identification number to the transfer;
**(B)** provide the licensee with the number; and
**(C)** destroy all records of the system with respect to the call (other than the identifying number and the date the number was assigned) and all records of the system relating to the person or the transfer.
**(3)** Paragraph (1) shall not apply to a firearm transfer between a licensee and another person if--

(A)(i) such other person has presented to the licensee a permit that--
(I) allows such other person to possess or acquire a firearm; and
(II) was issued not more than 5 years earlier by the State in which the transfer is to take place; and
(ii) the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law;
(B) the Attorney General has approved the transfer under section 5812 of the Internal Revenue Code of 1986; or
(C) on application of the transferor, the Attorney General has certified that compliance with paragraph (1)(A) is impracticable because--
(i) the ratio of the number of law enforcement officers of the State in which the transfer is to occur to the number of square miles of land area of the State does not exceed 0.0025;
(ii) the business premises of the licensee at which the transfer is to occur are extremely remote in relation to the chief law enforcement officer (as defined in subsection (s)(8)); and
(iii) there is an absence of telecommunications facilities in the geographical area in which the business premises are located.
(4) If the national instant criminal background check system notifies the licensee that the information available to the system does not demonstrate that the receipt of a firearm by such other person would violate subsection (g) or (n) or State law, and the licensee transfers a firearm to such other person, the licensee shall include in the record of the transfer the unique identification number provided by the system with respect to the transfer.
(5) If the licensee knowingly transfers a firearm to such other person and knowingly fails to comply with paragraph (1) of this subsection with respect to the transfer and, at the time such other person most recently proposed the transfer, the national instant criminal background check system was operating and information was available to the system demonstrating that receipt of a firearm by such other person would violate subsection (g) or (n) of this section or State law, the Attorney General may, after notice and opportunity for a hearing, suspend for not more than 6 months or revoke any license issued to the licensee under section 923, and may impose on the licensee a civil fine of not more than $5,000.
(6) Neither a local government nor an employee of the Federal Government or of any State or local government, responsible for providing information to the national instant criminal background check system shall be liable in an action at law for damages--
(A) for failure to prevent the sale or transfer of a firearm to a person whose receipt or possession of the firearm is unlawful under this section; or
(B) for preventing such a sale or transfer to a person who may lawfully receive or possess a firearm.

18 U.S.C.A. § 922 (West)

(g) It shall be unlawful for any person--
(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
(2) who is a fugitive from justice;

(3) who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));
(4) who has been adjudicated as a mental defective or who has been committed to a mental institution;
(5) who, being an alien--
(A) is illegally or unlawfully in the United States; or
(B) except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26)));
(6) who has been discharged from the Armed Forces under dishonorable conditions;
(7) who, having been a citizen of the United States, has renounced his citizenship;
(8) who is subject to a court order that--
(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; or
(9) who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C.A. § 922 (West)

(n) It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.