**FILED**
**U.S. DISTRICT COURT**
**EASTERN DISTRICT ARKANSAS**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

MAY 0 7 2024

TAMMY H. DOWNS, CLERK
By: _____
                    DEP CLERK

| | | |
|---|---|---|
| STATE OF KANSAS, et al., | : | |
| | : | |
| *Plaintiffs,* | : | Case No. 2:24-CV-88 |
| | : | |
| | : | District Judge James M. Moody Jr. |
| v. | : | |
| | : | |
| MERRICK B. GARLAND, et al., | : | |
| | : | |
| *Defendants.* | : | |

---

## MOTION FOR LEAVE TO FILE BRIEF OF *AMICUS CURIAE* STATE OF OHIO

---

The State of Ohio respectfully moves for leave to file an *amicus* brief in this matter. This case presents the question whether a federal agency unlawfully exceeded the authority delegated to it by Congress. The agency did, and that violates the separation of powers. Additionally, the agency's rule violates federalism principles by subjecting Ohio citizens to police power regulations that Ohio has decided against. Finally, the agency's rule violates Ohio citizens' Second Amendment rights. Accordingly, the State of Ohio has a clear interest in this matter. Therefore, the *amicus* State of Ohio moves for leave to file an *amicus* brief supporting the plaintiffs.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

April C. Cotton, AR Bar# 2022115
Gordon Rees Scully Mansukhani, LLP
400 W. Capitol Avenue
Suite 1700
Little Rock, AR 72201
(501) 773-2053
acotton@grsm.com

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER
   (*pro hac vice forthcoming*)
Ohio Solicitor General
30 East Broad Street, 17th Floor
(614) 466-8980
Thomas.Gaiser@OhioAGO.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2024, a copy of the foregoing pleading was sent by U.S. mail to the following.

Bureau of Alcohol, Tobacco, Firearms, and Explosives
99 New York Avenue, NE
Washington, DC 20226

Steven Dettelbach, ATF Director
99 New York Avenue, NE
Washington, DC 20226

United States Department of Justice
950 Pennsylvania Ave., NW,
Washington, D.C. 20530

Merrick B. Garland, Attorney General
950 Pennsylvania Ave., NW,
Washington, D.C. 20530

Nicholas J. Bronni
Dylan L. Jacobs
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201

/s/
April C. Cotton

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

| | |
|---|---|
| STATE OF KANSAS, et al., | : |
| | : |
| *Plaintiffs,* | : Case No. 2:24-CV-88 |
| | : |
| | : District Judge James M. Moody Jr. |
| v. | : |
| | : |
| MERRICK B. GARLAND, et al., | : |
| | : |
| | : |
| *Defendants.* | : |

**BRIEF OF *AMICI CURIAE* STATE OF OHIO IN SUPPORT OF THE**
**PLAINTIFFS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. i

INTRODUCTION AND INTERESTS OF *AMICUS* .................................................... 1

STATEMENT ....................................................................................... 1

ARGUMENT ........................................................................................ 1

    I.     Congress explicitly denied the ATF the power it asserts to mandate universal licensing and background checks. ................................................ 1

    II.    The ATF rule triggers the major questions doctrine.................................... 1

    III.   Congress has not clearly authorized ATF to impose universal licensing and background checks.................................................................... 1

    IV.   The Final Rule exceeds the ATF's statutory authority even under a *Chevron* analysis............................................................................ 1

CONCLUSION...................................................................................... 1

CERTIFICATE OF SERVICE ...................................................................... 1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
  467 U.S. 837 (1984) ................................................................................................. 11

*Clinton v. City of N.Y.,*
  524 U.S. 417 (1998) ................................................................................................... 1

*D.C. v. Heller,*
  554 U.S. 570 (2008) ................................................................................................... 1

*Elrod v. Burns,*
  427 U.S. 347 (1976) ................................................................................................... 1

*Loper Bright Enters., Inc., v. Raimondo,*
  No. 22-451 (May 1, 2023) ........................................................................................ 11

*McDonald v. Chicago,*
  561 U.S. 742 (2012) ................................................................................................... 1

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  597 U.S. 1 (2022) ....................................................................................................... 1

*West Virginia v. EPA,*
  597 U.S. 697 (2022) ................................................................................... 7, 8, 9, 11

**Statutes and Rules**

5 U.S.C. §705 ................................................................................................................. 3

5 U.S.C. §706 ................................................................................................................. 2

7 U.S.C. §1339d ........................................................................................................... 10

18 U.S.C. §921 ..................................................................................................... passim

18 U.S.C. §922 ........................................................................................................... 3, 8

18 U.S.C. §923 ............................................................................................................... 3

18 U.S.C. §924 ............................................................................................................... 8

18 U.S.C. §3571 ............................................................................................................. 8

40 U.S.C. §1315 ........................................................................................................ 10

54 U.S.C. §100903 .................................................................................................... 10

89 Fed. Reg. 28968 ............................................................................................ 2, 4, 9

Pub. L. No. 103-159 (1993) ...................................................................................... 7

Pub. L. No. 117-159, §12002, 136 Stat. 1313 (2022) ...................................... 9

**Other Authorities**

Federal Firearms Licenses, Bureau of Alcohol, Tobacco, Firearms, and Explosives . 3

H.R.2122, 106th Cong. (1999) .................................................................................. 7

H.R.8, 117th Cong. (2021) ........................................................................................ 8

S.22, 113th Cong. (2013) ........................................................................................... 7

## INTRODUCTION AND INTERESTS OF *AMICUS*

The American system of government protects individual liberty through three primary bulwarks: the separation of powers, federalism, and the Bill of Rights. *Clinton v. City of N.Y.*, 524 U.S. 417, 450 (1998) (Kennedy, J., concurring). The federal government's action here, an executive-branch agency's decree expanding background checks for firearms far beyond the limits Congress expressly set, menaces all three protections. Amicus the State of Ohio writes to vindicate its interests in each.

The State of Ohio is interested in opposing federal agency action that exceeds the statutory authority delegated to it by Congress, undermining the separation of powers. That is especially true when, as here, the action also imposes police-power regulations on Ohioans that the State itself has decided against, eroding a key protection of federalism. The State of Ohio also has a sovereign interest in upholding its citizens' fundamental right to armed self-defense. *See D.C. v. Heller*, 554 U.S. 570, 599, 628 (2008); *McDonald v. Chicago*, 561 U.S. 742, 767 (2012). The Final Rule impairs Ohioans' Second Amendment rights and thus irreparably harms them, *see Elrod v. Burns*, 427 U.S. 347, 373 (1976), by prohibiting them from purchasing firearms for self-defense except through a licensed dealer and after submitting to a background check—a scheme that does not remotely resemble any historical regulation. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24, 30–31 (2022). The State of Ohio seeks to vindicate these interests by urging that this Court stay the Final Rule pending merits review.

1

The Plaintiffs' memorandum demonstrates that they are entitled to the relief they seek. The Final Rule published at 89 Fed. Reg. 28968 not only exceeds the power Congress delegated to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). It actually *violates* the statutory provision it purports to draw authorization from. It bans all sales of firearms useful for self-defense, except for sales made through ATF-licensed dealers who must run a background check on the purchaser. But Congress has expressly protected sales by private individuals selling guns they personally own from these requirements. In that way, Congress directly precluded the Final Rule's attempt to turn virtually *every* handgun sale (and most long gun sales) into a licensed "dealer" sale subject to a background check. Plaintiffs request that the Court stay the Final Rule by postponing its effective date pending judicial review.

Amicus, the State of Ohio, writes to emphasize the most straightforward path for this Court to resolve Plaintiffs' request. Namely, this Court should hold that Plaintiffs are likely to succeed on their Administrative Procedure Act ("APA") claims because the Final Rule both contradicts the statute and asserts authority to answer a major policy question. Such agency boldness requires the Final Rule to point to a clear statement from Congress that authorizes a regulatory end to debate on an issue of extraordinary political significance. Since the Final Rule would end the decades-long national background-check debate without clear congressional authorization to do so, it is "in excess of statutory ... authority," 5 U.S.C. §706(2), and

2

this Court should grant a stay to "postpone the effective date of [the] agency action … pending conclusion of the review proceedings," 5 U.S.C. §705.

## STATEMENT

Congress has long required background checks only for firearm purchases through a "dealer." 18 U.S.C. §§921(a)(11), 922(t)(1)(A). A "dealer" is "any person engaged in the business of selling firearms," 18 U.S.C. §921(a)(11), and must obtain a federal firearms license ("FFL"), 922(a)(1)(A), which costs $200, takes months of wait time, and requires the dealer to record every transaction for an annual ATF inspection. *Federal Firearms Licenses*, Bureau of Alcohol, Tobacco, Firearms, and Explosives, https://perma.cc/9JQM-8K3F; 18 U.S.C. §923(g)(1)(A), (g)(1)(B)(ii)(I).

But Congress has never required background checks for used gun sales among private individuals. Indeed, Congress has made clear that private individuals like gun collectors do not need a license to sell firearms: an individual who decides to sell a gun he or she owns is not "engaged in the business of" gun-dealing. 18 U.S.C. §921(a)(11). Congress carefully specified that "a person who makes occasional sales … of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms" is not a dealer and need not obtain a federal license or conduct pre-sale background checks. 18 U.S.C. §921(a)(21)(C). Only someone who sells "firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms" is "engaged in the business" of selling firearms, and thus a "dealer" subject to licensing and pre-sale background-checking requirements. *Id*.

3

In the guise of furthering the purpose of this statute, the Final Rule effectively eliminates the "dealer" limitation on licensing and background check requirements by making everyone who sells a gun into a "dealer." Here is how.

It begins by decreeing that "[e]ven a single firearm transaction, or offer to engage in a transaction, when combined with other evidence, may be sufficient to require a license" and therefore, a pre-sale background check on the purchaser. 89 Fed. Reg. 28968, 28976. The Final Rule does not specify what sort of "other evidence" might transform "a single firearm transaction" into "a regular course of trade or business ... through the repetitive purchase and resale of firearms." In the case of a single firearm transaction there are, by definition, no other firearms transactions to point to. Thus anyone who sells a gun might be committing a felony if they do so without the ATF's prior permission.

Having thus removed "course of business" from Congress's definition of "dealer[s]," the Final Rule next interprets the "to predominantly earn a profit" requirement to create a presumption of profit motive if the seller "advertises or posts firearms for sale, including on any website" or "purchases, rents, or otherwise secures ... space at a gun show." *Id.* at 28981. A private individual who buys a ticket to a gun show and enters bringing one gun for sale has presumably "secure[d] ... space at a gun show." Thus a person, offering a single firearms transaction, may be a gun "dealer."

The Final Rule addresses the statutory protection for sales involving a "personal collection," but quickly dispatches it by concluding that "firearms accumulated

4

primarily for *personal protection* are not included." *Id.* at 28969, 29039 (emphasis added). And the ATF conveniently gives itself discretion to decide "[w]hether a firearm is part of a personal collection" based on "the kind and type of firearms." *Id.* at 29039. If the cases that the Final Rule cites for support are any indication, *see id.* at 29039 n.220 (listing cases applying sentencing enhancements for criminal possession of firearms), that means no one can buy or sell any modern handgun or any shotgun or rifle that might be used for individual self-defense except through an FFL-holder and after a background check. (The Final Rule purports to allow private buying and selling of "personal firearms ... for 'historical re-enactment,'" *id.* at 28996, which presumably includes a limited sphere of firearms, like muzzleloaders and cap-and-ball revolvers).

In short, the ATF has asserted power to mandate universal background checks for everyone hoping to newly exercise their Second Amendment right to own a firearm for self-defense, and imposed criminal sanctions on private sales without such background checks.

## ARGUMENT

The ATF has no statutory authority to settle a political controversy that has roiled the nation for decades, let alone do so in a way that assiduously flouts what Congress *has* said on the issue. Members of Congress have repeatedly introduced bills to create the universal background check system that the ATF's Final Rule now imposes, and each time Congress has rejected the proposal. That history of profound and earnest disagreement on a topic directly implicating a Bill of Rights freedom makes universal background checks a quintessential "major question" that

an agency may not settle absent statutory text clearly granting it that power. Here, the ATF claims authorization to mandate universal background checks from a statute that clearly rejects that policy choice. That will not do. Plaintiffs are likely to succeed on their APA claims and, for the reasons they identify, face irreparable harm. This Court should therefore grant Plaintiffs' request to stay the Final Rule pending judicial review.

## I.     Congress explicitly denied the ATF the power it asserts to mandate universal licensing and background checks.

The Final Rule would label individuals who wish to sell personally owned self-defense firearms "dealers" subject to ATF-licensing and pre-sale buyer background check requirements. *Above* at 3–4. But Congress expressly told the ATF that it could not do that by writing an exception to the definition of "dealer" right into the statute the ATF relies on for authority to promulgate the Final Rule.

Congress specified that "a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms" is *not* a "dealer" and need not get a license or conduct a background check on buyers.   18 U.S.C. §921(a)(21)(C). That language expressly precludes the Final Rule's requirements of seller-licensing and buyer background checks for all sales of firearms suitable for self-defense. Because swallowing this exception is contrary to law, the court need travel no further than this plain text to grant relief to the plaintiffs on their APA claims.

6

## II.   The ATF rule triggers the major questions doctrine.

But even if the plain text were not sufficient to show the Final Rule is unlaw-ful, the ATF would need to show more than that the text merely *allows* its interpre-tation.  That is because in cases where an agency asserts authority of extraordinary "history and … breadth" to resolve a matter of great "political significance" and end "an earnest and profound debate across the country," the major questions doctrine demands the agency point to "clear congressional authorization" for its action to survive judicial review.  *West Virginia v. EPA*, 597 U.S. 697, 721, 732, 724 (2022) (quotations omitted and alterations accepted).  The major-questions doctrine clear statement rule applies to the ATF's edict for two reasons.

First, the Final Rule purports to settle a major question by "adopt[ing] a reg-ulatory program that Congress had conspicuously and repeatedly declined to enact itself."  *Id.* at 724. The history of background checks for firearms sales in the United States shows that the topic is one of "earnest and profound debate."  *Id.* at 732 (quo-tation omitted).  Since Congress created a limited background check system in the 1993 "Brady Handgun Violence Prevention Act", Pub. L. No. 103-159, enacted June 25, 2022, there have been multiple attempts to expand that system, all of which failed to gain the support necessary for enactment.  In 1999, the "Mandatory Gun Show Background Check Act" was introduced and died in the House of Representa-tives.  H.R.2122, 106th Cong. (1999).  The "Gun Show Background Check Act of 2013" was introduced in the Senate and died in committee.  S.22, 113th Cong. (2013).  Most recently, a universal background check bill that passed the House stalled in the Senate in 2021.  H.R.8, 117th Cong. (2021).  That Congress has "con-

7

spicuously and repeatedly declined to enact" background check expansion shows that it is an issue of great "political significance" that gives courts "every reason to hesitate before concluding that Congress meant to confer on [ATF] the authority it claims" to mandate universal background checks for self-defense firearm purchases. *West Virginia*, 597 U.S. at 721, 724–25 (quotation omitted).

Second, the breadth of ATF's claimed power is also extraordinary.  Recall that the Final Rule requires everyone who wishes to sell a firearm suitable for self-defense to obtain a federal firearms license from the ATF. *Above* at 3–4.  The Final Rule also requires everyone who buys a self-defense firearm to submit to a background check. *Above* at 3–4.  Obtaining a license involves a $200 application fee and several months of waiting for the ATF to process the application, plus an obligation to maintain records of all firearms sales, which ATF can inspect yearly. *Above* at 3.  And because the ATF reserves for itself broad case-by-case discretion to determine whether a sale requires a license, *any* firearm sale not reported to the ATF risks severe criminal penalties: 5 years in prison and a $250,000 fine to the seller.  18 U.S.C. §§922(a)(1)(A), 924(a)(1)(D), 3571(b)(3).  Congress does not lightly give executive-branch agencies power to turn what was yesterday recognized as a right into a felony today.

III.    **Congress has not clearly authorized ATF to impose universal licensing and background checks.**

The ATF cannot point to "clear congressional authorization for the power it claims," *West Virginia*, 597 U.S. at 723 (quotation omitted), because no such authorization exists.

The ATF claims Congress authorized universal background checks by amending "the definition of 'engaged in the business' in ... 18 U.S.C. [§]921(a)(21)(C)" via the Bipartisan Safer Communities Act, Publ. L. No. 117-159, §12002, 136 Stat. 1313, 1324 (2022).  89 Fed. Reg. 28968, 28968.  As amended, the statute defines "engaged in the business" of dealing in firearms as selling "firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms."  18 U.S.C. §921(a)(21)(C).

This is not a delegation of authority for the ATF to require a federal license for any individual selling a self-defense firearm and thereby foist universal background checks on the American people by regulation.  Consider that before the amendment, "engaged in the business" of dealing firearms was defined as selling "firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms."  18 U.S.C. §921(a)(21)(C) (2021).  According to the ATF, Congress's decision to drop "the principal objective of livelihood" from the definition of who is a gun dealer authorized the ATF to mandate that everyone who sells a self-defense firearm, even in a single isolated transaction, become an FFL dealer and run a background check, or risk a felony prosecution.  That is not clear from the statute.  It is not even plausible.

An amendment to a definition that replaces six words with four others to specify that part-time gun dealers are still gun dealers is not a clear statement authorizing the Final Rule's sweeping new regime.  Consider clear statements Congress has used to authorize agency action in the past.  *See, e.g.*, 54 U.S.C. §100903(b) ("The Secretary [of the Interior] shall prescribe regulations ... to mitigate the adverse effects of solid waste disposal sites" on federal property); 40 U.S.C. §1315(c)(1) ("The Secretary [of Homeland Security] ... may prescribe regulations necessary for the protection" of federal property, which "may include reasonable penalties"); 7 U.S.C. §1339d(e) ("The Secretary of Agriculture is authorized to make or guarantee loans to farmers").  Alternatively, (constitutional problems aside) Congress could have authorized the Final Rule by doing away with the "engaged in the business" language altogether, and amending the statutory definition of gun "dealer" to read "any person who, under any circumstances, sells a modern handgun or a shotgun or rifle that the Director, in his sole discretion, would like to regulate." *But see* 18 U.S.C. §921(a)(11) (defining "dealer"). But this is not what Congress did.

There is a more natural reading of the amendment than the ATF's tortured exposition.  Rather than greenlight universal background checks for all purchases of firearms for self-defense, the Bipartisan Safer Communities Act amendment is a modest measure to make sure that gun dealers with day jobs remain subject to licensing requirements.  Before the amendment, people who generated significant income by regularly selling large numbers of firearms were arguably exempt from federal licensing if they earned their principal livelihood in another trade.  By drop-

ping the "livelihood" terminology, the amendment closed that potential gap. Congress's conspicuous maintenance of the "repetitive purchase and resale" qualifier to protect occasional and individual private sales reinforces that natural reading. It is not even plausible that, as the ATF claims, the amendment smuggles the strongest version of failed background-check legislation ever introduced past the political process that stopped even its milder forbears.

The implausibility of the ATF's reading of 18 U.S.C. §921(a)(21)(C) as clear-statement authorization to create a universal background check system for self-defense firearms means that the ATF lacks authority to promulgate the Final Rule. *See West Virginia*, 597 U.S. at 735.

## IV. The Final Rule exceeds the ATF's statutory authority even under a *Chevron* analysis.

ATF's interpretation would still fail even if the major questions doctrine did not apply and if *Chevron* lives on. *But see Loper Bright Enters., Inc., v. Raimondo*, No. 22-451 (May 1, 2023). Under *Chevron*, the Court should stop at step one because Congress has spoken clearly on the issue of who is a gun "dealer" and thus subject to licensing and pre-sale background check requirements. *Above* at 3; *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). For the same reason, the Final Rule's interpretation is not "reasonable," and therefore entitled to no judicial deference if the Court were to reach *Chevron* step two. *See Chevron*, 467 U.S. at 842.

The plaintiffs are likely to succeed on the merits of their APA claims whatever framework the Court applies.

11

*    *    *

Requiring federal-government approval for all new attempts to exercise a fundamental right is not the sort of thing an administrative agency can do without a clear statement of authorization from Congress (or even with one). Because Congress never clearly stated that it was delegating power to the ATF to impose massively controversial universal background checks on handgun and many long gun sales (indeed, Congress clearly stated the opposite), Plaintiffs are likely to succeed on their claim that the Final Rule exceeds the ATF's statutory authority.

## CONCLUSION

This Court should stay the Final Rule pending judicial review because the Final Rule exceeds the ATF's statutory authority.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

April C. Cotton, AR Bar #2022115
Gordon Rees Scully Mansukhani, LLP
400 W. Capitol Avenue
Suite 1700
Little Rock, AR 72201
(501) 773-2053
acotton@grsm.com

*/s/T. Elliot Gaiser*
T. ELLIOT GAISER
    (*pro hac vice forthcoming*)
Ohio Solicitor General
30 East Broad Street, 17th Floor
(614) 466-8980
Thomas.Gaiser@OhioAGO.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2024, a copy of the foregoing pleading was

sent by U.S. mail to the following.

Bureau of Alcohol, Tobacco, Firearms, and Explosives
99 New York Avenue, NE
Washington, DC 20226

Steven Dettelbach, ATF Director
99 New York Avenue, NE
Washington, DC 20226

United States Department of Justice
950 Pennsylvania Ave., NW,
Washington, D.C. 20530

Merrick B. Garland, Attorney General
950 Pennsylvania Ave., NW,
Washington, D.C. 20530

Nicholas J. Bronni
Dylan L. Jacobs
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201

/s/
April C. Cotton

14