IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS *et al.*, | |
| Plaintiffs, | |
| v. | 2:24-CV-89-Z |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion for a Temporary Restraining Order ("Motion") (ECF No. 16), filed on May 9, 2024. Defendants responded (ECF No. 22) on May 14, 2024. Having reviewed the materials, the Court **GRANTS IN PART** the Motion. Accordingly, Defendants are hereby **TEMPORARILY RESTRAINED** from enforcing the regulations — "Definition of 'Engaged in the Business' as a Dealer in Firearms" (hereinafter "Final Rule") — published at 89 Fed. Reg. 28968 (April 19, 2024) (to be codified at 27 C.F.R. pt. 478) against Plaintiffs Texas, Jeffery Tormey ("Tormey"), the Gun Owners of America, Inc. ("GOA"), the Gun Owners Foundation ("GOF"), the Tennessee Firearms Association ("TFA"), and the Virginia Citizens Defense League ("VCDL"), **through June 2, 2024**.

### BACKGROUND

The United States Attorney General has authority to enforce the Gun Control Act of 1968 ("GCA") and promulgate regulations necessary to enforce its provisions. 18 U.S.C. § 926(a). Congress and the Attorney General, in turn, delegated GCA administrative and enforcement responsibilities to the Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). 28 U.S.C. §§ 599A(b)(1), (c)(1); 28 C.F.R. §§ 0.130(a)(1)–(2).

The GCA imposes strict requirements on firearms dealers and severe consequences for violating them. It makes it unlawful for any person — save a licensed dealer — to "engage in the business" of dealing in firearms until he has filed an application with ATF and received a license. 18 U.S.C. § 923(a). It requires dealers to conduct background checks on prospective firearms recipients and to maintain records for tracing purposes. *Id.* §§ 922(t), 922(b)(5), 923(g)(1)(A). And it provides that persons who willfully engage in the business of dealing firearms without a license face imprisonment for up to five years, a fine of up to $250,000, or both. *Id.* §§ 922(a)(1)(A), 924(a)(1)(D), 3571(b)(3). Any firearms involved in such violations may be subject to administrative or civil forfeiture. *Id.* § 924(d)(1).

The Firearms Owners' Protection Act of 1986 ("FOPA") modified the GCA, adding a statutory definition of "engaged in the business" as "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms." Public Law 99-308, § 101, 100 Stat. 449, 450 (1986). Then in 2022, President Biden signed into law the Bipartisan Safer Communities Act ("BSCA"). The BSCA broadened the definition of "engaged in the business" by eliminating the requirement that a person's "principal objective" of purchasing and reselling firearms must include both "livelihood and profit," replacing it with a requirement to "predominantly earn a profit." 18 U.S.C. § 921(a)(21)(C). However, the BSCA did not alter FOPA's exclusions for "a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." *Id.*

On April 19, 2024, ATF promulgated a Final Rule to "provide clarity to persons who remain unsure of whether they are *engaged in the business* as a dealer in firearms with

2

the *predominant intent* of obtaining pecuniary gain." 89 Fed. Reg. at 28968 (emphasis added). To that end, it clarifies "that firearms dealing may occur wherever, or through whatever medium, qualifying . . . activities are conducted." *Id.* This includes "a gun show or event, flea market, auction house, or gun range or club; at one's home; by mail order; over the internet; through . . . other electronic means (*e.g.*, an online broker, online auction, text messaging service, social media raffle, or website) . . . ." *Id.* at 28973–74. And it clarifies that "a single firearm transaction or *offer* to engage in a transaction" may require a license. *Id.* at 29091 (emphasis added).

Four States, a handful of organizations, and an individual citizen argue that the Final Rule violates the Administrative Procedure Act ("APA") and the U.S. Constitution. In their view, the Final Rule is (1) arbitrary and capricious; (2) in excess of ATF's lawful authority; (3) an abuse of ATF's discretion; (4) in contravention of the BSCA; and (5) violative of the Second and Fourth Amendments. *See generally* ECF No. 16. And Plaintiffs aver that they will suffer irreparable harm when the Final Rule takes effect — as scheduled — on May 20, 2024. *Id.* at 2. Defendants respond that (1) Plaintiffs do not have standing, and (2) even if they did, their claims fail on the merits. ECF No. 31 at 25, 36.

### LEGAL STANDARD

To obtain a preliminary injunction or temporary restraining order, Plaintiffs must show (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest. *Robinson v. Ardoin*, 86 F.4th 574, 587 (5th Cir. 2023); *Air Prod. & Chemicals, Inc. v. Gen. Servs. Admin.*, No. 2:23-CV-147-Z, 2023 WL 7272115, at *2 (N.D. Tex. Nov. 2, 2023); *see also Janvey*

3

*v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (explaining that courts apply identical standards for preliminary injunctions and temporary restraining orders).

The first two factors are most critical, and the latter two merge when the government is an opposing party. *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020); *Nken v. Holder*, 556 U.S. 418, 435 (2009). That said, no factor has a "fixed quantitative value." *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023). On the contrary, "a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Id.* In sum, "[t]he decision to grant or deny [relief] lies within the sound discretion of the trial court . . . ." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989).

**ANALYSIS**

**I.      Plaintiffs Louisiana, Mississippi, and Utah fail to demonstrate standing.**

The Court must address the threshold question of standing before addressing the merits. *People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.*, 7 F. Supp. 3d 1, 7 (D.D.C. 2013) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998)). Here, Plaintiffs' Complaint — insofar as it implicates Louisiana, Mississippi, and Utah — only claims that each "is a sovereign State of the United States." ECF No. 1 at 3. But the Complaint falls short by not explaining, or even alleging, any injury to each State's sovereign or semi-sovereign interests. *See Louisiana State by & through Louisiana Dep't of Wildlife & Fisheries v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872, 881 (5th Cir. 2023) (explaining that "the declaration does not 'connect the dots' . . . to the State's ostensible sovereign injury"). Neither Plaintiffs' Motion (ECF No. 16) nor their reply brief (ECF No. 37) proffers *any* arguments to support those States' standing. Likewise, Plaintiffs' "States' Comment" exhibit — despite arguing at length that the Final Rule is unlawful — says nothing about standing.[1] ECF No. 16-2.

---

[1] Moreover, at the TRO hearing, Plaintiffs' counsel did not present any arguments about standing for Louisiana, Mississippi, or Utah. *See* Tr. at 16: 7–8 ("I'm here today . . . just talking about Texas's standing.").

4

This Court understands the difficulties inherent in multi-State litigation — and particularly where, as here, there is an expedited briefing schedule. However, these States' showings fall short, even at this early stage of litigation. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (explaining that "the proof required to establish standing increases as the suit proceeds[.]"); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). As such, Louisiana, Mississippi, and Utah will not be afforded relief at this stage of litigation.

II.     **All other Plaintiffs show standing.**

However, Plaintiffs Texas, Tormey, and affiliated organizations have sufficiently demonstrated standing for the purposes of the requested temporary restraining order. The Court takes each in turn.

First, Texas adequately pleads a cognizable "pocketbook injury" — "a prototypical form of injury in fact." *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021); *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 461 (2017). Specifically, Texas illustrates how the Final Rule will prohibit otherwise eligible persons from obtaining a Federal Firearms License ("FFL"), thereby reducing total gun sales at gun shows. ECF No. 37 at 7–8. And because Texas "has a sales tax that applies to the sale of firearms at gun shows," it will sustain financial loss.[2]

Moreover, "[i]n determining whether costs are irreparable, the key inquiry is 'not so much the magnitude but the irreparability.'" *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023) (quoting *Texas v. U.S. Env't Prot. Agency*, 829 F.3d 405, 433 (5th Cir. 2016)). And even purely economic costs — like those alleged here — "may count as irreparable harm where they cannot be recovered in the ordinary course of litigation." *Rest. L. Ctr.*, 66 F.4th at 597.

---

[2] Between the Final Rule's effective date and July of 2024, Texas has 58 gun shows calendared. ECF No. 37 at 7. Texas collects 6.25 percent State tax on taxable items sold — including guns sold at gun shows. *Id.*

Second, Tormey pleads that he has "bought, sold, and traded firearms" for "many years" as part of his "large personal collection," and "even previously purchased a table at certain gun shows, in order to facilitate enhancing [his] collection." ECF No. 16-3 at 3. In response, Defendants point to *Susan B. Anthony List v. Driehaus* for the proposition that the "threat of future enforcement" against a plaintiff bringing a pre-enforcement challenge must be "substantial." 573 U.S. 149, 159 (2014). But that case "treated the threat of future enforcement as case-and fact-specific, understanding that evaluating threats . . . cannot be neatly reduced to a rigid formula." *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 928 (5th Cir. 2023). Accordingly, "even a 'public[] announce[ment]' to enforce a statute and one prior proceeding are sufficient for standing." *Id.* (quoting *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 750 (8th Cir. 2019)).

Here, Defendants have announced their intent to enforce the Final Rule and the GCA. ECF No. 37 at 9. And Plaintiffs have identified a prior enforcement proceeding "targeting conduct falling squarely within the [Final] Rule's ambit." *Id.*; *e.g.*, ECF No. 16-4 at 8–9 (Declaration of Erich M. Pratt). Tormey is thus well situated to allege that the Final Rule may be enforced against him. And Defendants do not deny — nor could they deny — that such an enforcement would result in irreparable injury if it occurred.

Lastly, the organizations GOA, GOF, TFA, and VCDL show standing. Under the doctrine of associational standing, an association may bring suit on behalf of its members when (1) those members would otherwise have standing to sue; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members. *Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. Appx. 189, 195 (5th Cir. 2012).

Here, three organizations (GOA, TFA, and VCDL) count Tormey — who has standing — as a member. ECF No.16-3 at 2. Moreover, TFA and VCDL have provided declarations evidencing that they have specific members "who will be impacted [by the Final Rule] because they have . . . bought and resold firearms, and wish to do so in the future without being improperly labeled as a 'dealer' in firearms." ECF No. 16-5 at 3 (Declaration of C. Richard Archie); ECF No. 16-6 at 3–4 (Declaration of Philip Van Cleave). The same holds true for GOF. *See* ECF No. 16-4 at 4 (Declaration of Erich M. Pratt). And the GOA describes a former FFL whose retirement savings are now frozen in unsellable inventory. ECF Nos. 37 at 11; 16-4 at 8.

Defendants respond that the organizations must identify their members by *name* to have associational standing. *See* ECF No. 31 at 33 ("[The organizational Plaintiffs] cannot establish standing based on an unnamed member."). And they cite *Summers v. Earth Island Institute*, 555 U.S. 488 (2009) for support. But *Summers* did not consider impermissible reliance on anonymous or pseudonymous declarations to establish standing.[3] *Id.* at 495. Rather, it considered the plaintiffs' failure "to allege that *any* particular . . . sale or other project claimed to be unlawfully subject to the regulations [would] impede a specific and concrete plan" of the plaintiffs. *Id.* (emphasis in original). Nor has the Supreme Court adopted a "naming requirement" — such as the one proposed by Defendants — in the wake of *Summers*. *See, e.g.*, *Students for Fair Admissions, Inc. v. Harvard*, 600 U.S. 181, 200–01 (2023) (holding that an organization had standing "when it filed suit" where it "identified" individual harmed members but did not provide their names).

Nor does the Fifth Circuit offer any support for Defendants' "identify-by-name" requirement. *See Hancock Cnty. Bd. of Sup'rs,* 487 F. Appx. at 195 (upholding the use of

---

[3] The Tenth Circuit recognized that "[a]nonymity was not even an issue before the Supreme Court in *Summers*." *Speech First, Inc. v. Shrum,* 92 F.4th 947, 949 (10th Cir. 2024). "Although one might read language in that opinion to require that only persons identified by their legal names can have standing, that was clearly not the intent of the Court." *Id.* "The opinion provided no hint, much less an emphatic statement, that it was abrogating decades of precedent." *Id.*

7

anonymous declarations); *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020) (accepting anonymous declarations); *Blanchard v. Bergeron*, 489 U.S. 87 (1989). Nor do our sister districts in this Circuit. *See Chamber of Com. of U.S.A. v. Consumer Fin. Prot. Bureau*, No. 6:22-CV-00381, 2023 WL 5835951, at *6 (E.D. Tex. Sept. 8, 2023) ("[D]efendants argue that no plaintiff has shown that an 'identified member' suffers harm because some plaintiffs have used pseudonyms . . . . That argument fails."); *id.* (finding that anonymous declarations "credibly show that plaintiffs have identified members . . . currently suffering cognizable harm"). Nor — for that matter — do courts *outside* this Circuit. *See Speech First, Inc. v. Shrum*, 92 F.4th 947, 949 (10th Cir. 2024) ("Longstanding and well-established doctrine in the federal courts establishes that anonymous persons may have standing to bring claims.").

For the foregoing reasons, Plaintiffs Texas, Tormey, and the organizations have satisfied their burden at this stage. No arguments advanced by Defendants convince the Court otherwise.

**III.    Plaintiffs are substantially likely to prevail on the merits.**

**A.  The Final Rule likely violates the APA.**

Judicial review under the APA is limited to the administrative record. 5 U.S.C. § 706. "[A]gencies, as mere creatures of statute, must point to explicit Congressional authority justifying their decisions." *Clean Water Action v. U.S. Env't Prot. Agency*, 936 F.3d 308, 313 n.10 (5th Cir. 2019); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress."). As such, courts are compelled to "hold unlawful and set aside agency action[s]" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory . . . authority . . . ." 5 U.S.C. § 706(2)(A), (C).

8

As this is a question of statutory interpretation, the Court begins with the text. *United States v. Lauderdale Cnty., Miss.*, 914 F.3d 960, 961 (5th Cir. 2019). And here, the Final Rule clashes with the text of the BSCA in at least three ways. First, it asserts that there is no "minimum number of firearms to actually be sold to be 'engaged in the business'" for the purposes of the licensing requirement. 89 Fed. Reg. at 29021. "[A] single firearm transaction" — or even a mere *offer* to engage in a transaction — may suffice. *Id.* at 28976.

> [W]hile selling large numbers of firearms or engaging or offering to engage in frequent transactions may be highly indicative of business activity, neither the courts nor the Department have recognized a set minimum number of firearms purchased or resold that triggers the licensing requirement. Similarly, there is no minimum number of transactions that determines whether a person is "engaged in the business" of dealing in firearms. *Even a single firearm transaction*, or offer to engage in a transaction, when combined with other evidence, *may be sufficient to require a license*.

89 Fed. Reg. at 28976 (emphasis added).

But the BSCA says otherwise:

The term "engaged in the business" means . . .

\*\*\*

> as applied to a dealer in firearms, as defined in section 921(a)(11)(A), a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through *the repetitive purchase and resale of firearms*, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms[.]

18 U.S.C. § 921(a)(21)(C) (emphasis added).

Defendants' proffered interpretation is severely undercut by Section 921(a)(21)(C)'s use of (1) "firearms," in the plural; (2) the phrase "regular course," clearly contemplating a series of events; (3) "repetitive," meaning more than once; and (4) the Section's exemption of "sales, exchanges, or purchases" in the plural. 18 U.S.C. § 921(a)(21)(C). So too does Section

9

921(a)(21)(C) require the "purchase *and* resale" of firearms — a conjunctive requirement that flatly contradicts Defendants' assertion that "there is no minimum threshold number of firearms purchased *or* sold that triggers the licensing requirement." 89 Fed. Reg. at 29091 (emphasis added).

Second, the Final Rule suggests that "actual profit is not a requirement of the statute — it is only the predominant *intent* to earn a profit through the repetitive purchase and resale of firearms that is required." *Id.* at 29045. In other words, "a person may repeatedly advertise and display firearms for sale, and therefore demonstrate a predominant intent to earn a profit from repeatedly reselling the firearms purchased, but never actually find a buyer." *Id.* But Section (a)(22) of the BSCA provides:

> The term "to predominantly earn a profit" means that the intent underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: *Provided*, That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for *criminal purposes or terrorism*.

18 U.S.C § 921(a)(22) (emphasis added).

The negative corollary is obvious: while proof of profit is *not* required "for criminal purposes or terrorism," it *is* required for all other cases. *See Baptist Mem'l Hosp. - Golden Triangle, Inc. v. Azar*, 956 F.3d 689, 694 (5th Cir. 2020) ("[T]he canon of *Expressio Unius Est Exclusio Alterius* . . . provides that 'expressing one item of [an] associated group or series excludes another left unmentioned.'"). Moreover, the mere fact that the word "intent" appears in the Section does necessitate — or even suggest — that intent is *all* that is required. On the contrary, the Section's usage of "intent" serves merely to distinguish the *type* of intent contemplated: namely, "one of obtaining pecuniary gain." 18 U.S.C § 921(a)(22). Action is needed, too.

10

Third, the Final Rule arbitrarily eviscerates Section 921(a)(21)(C)'s safe harbor provision.[4] That provision reads:

> The term "engaged in the business" . . . shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms[.]

18 U.S.C. § 921(a)(21)(C). Nothing in the foregoing text suggests that the term "personal collection" does not include firearms accumulated primarily for personal protection — yet that is exactly what the Final Rule asserts. *See* 89 Fed. Reg. at 29090 ("[T]he term [personal collection] shall not include firearms accumulated . . . for personal protection[.]"). Nor can Defendants' position be supported by its *own* interpretative policy of implementing terms' "common meaning." *See id.* at 28974 ("This definition is consistent with the common meaning of 'purchase,' . . . . This definition is consistent with the common meaning of 'sale[.]'"). Here, Plaintiffs' reading of the Section 921(a)(21)(C) terminology "personal collection" is more consonant with "common meaning." *See Collection*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993) ("[A] number of objects or persons or a quantity of a substance that has been collected or has collected often according to some unifying principle . . . ."); *see also Collection*, WEBSTER'S SECOND NEW INTERNATIONAL DICTIONARY (1940) ("That which is collected; as: a gathering or assemblage of objects or of persons; an accumulation of specimens of a certain class . . . .").

Yet Defendants maintain their interpretation despite knowing that "two-thirds of Americans report owning firearms primarily for 'defense' or 'protection'" — thereby necessitating the absurdity that the statute's safe harbor provision provides *no safe harbor at all* for the majority

---

[4] Defendants themselves recognize the accuracy of the phrase "safe harbor provision" and utilize it several times throughout the Final Rule. *See, e.g.*, 89 Fed. Reg. at 29025 ("The proposed rule explicitly recognized the GCA's 'safe harbor' provision that a person is not engaged in the business if the person makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby.").

of gun owners. *Id.* at. 29036. Such an interpretation is untenable given the provision's logical statutory role. *See* A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167 (2012) ("[T]he whole-text canon . . . calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical *and logical relation of its many parts*," as "[t]he entirety of the document thus provides the context for each of its parts.") (emphasis added); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (holding that courts must look to "the language and design of the statute as a whole"); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("A court must . . . interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into a[] harmonious whole.").

Lastly, the Final Rule creates sets of presumptions indicating (1) "when a person has the intent to 'predominantly earn a profit'" and (2) "that someone is 'engaged in the business.'" 89 Fed. Reg. at 28968–69. But these presumptions are highly problematic for at least two reasons. First, they flip the statute on its head by requiring that firearm owners prove innocence rather than the government prove guilt. *See id.* at 29024 ("[T]he presumptions are rebuttable, so in the event a civil or administrative proceeding is brought, and a presumption is raised, *it can be rebutted with reliable evidence to the contrary.*") (emphasis added). Second, several presumptions conflict with the statutory text. For example, two provide that a person is presumptively "engaged in the business" if he "demonstrates a willingness and ability to purchase and resell" firearms or "purchases . . . *or* . . . resells" firearms. *Id.* at 29091 (emphasis added). But as discussed *supra*, a mere willingness is not enough — there must also be prohibited acts. *See* 18 U.S.C. § 921(a)(21)(C) ("through the *repetitive purchase and resale of firearms*") (emphasis added). Nor is purchasing *or* reselling sufficient — the statute provides a conjunctive. *See id.* ("purchas[ing] *and* res[elling]") (emphasis added).

12

Plaintiffs understandably fear that these presumptions will trigger civil or criminal penalties for conduct deemed lawful just yesterday. Nevertheless, ATF avers that its "knowledge of existing case law" and "subject-matter expertise" will prevent misuse or abuse of the presumptions. 89 Fed. Reg. at 28975. In other words, "just trust us." But "[p]resumptions, especially in administrative proceedings that may generate institution-destroying liability, cannot be a matter of Department *ipse dixit*." *Career Colleges & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 251 (5th Cir. 2024).

For the foregoing reasons, Plaintiffs are substantially likely to succeed on the merits of their APA claims. As such, further analysis of their other claims — including their constitutional ones — is unnecessary at this time.

### IV.    Plaintiffs face irreparable injury and are favored by the equities and public interest.

"In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 348 (5th Cir. 2022); *VanDerStok v. Garland*, 625 F. Supp. 3d 570, 582 (N.D. Tex. 2022). Irreparable harm must also be concrete, non-speculative, and more than *de minimis*. *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 586 (5th Cir. 2013). Lastly, "[t]he government's and the public's interests merge when the government is a party." *Mock v. Garland*, 75 F.4th 563, 577 (5th Cir. 2023).

That Plaintiffs would suffer irreparable injury absent an injunction is hard to dispute. Plaintiff Texas faces the irreparable injury of revenue loss. *Wages & White Lion Invs.*, 16 F.4th 1130, 1142 (5th Cir. 2021). Other Plaintiffs face both civil and criminal enforcement actions for engaging in conduct that the BSCA permits but the Final Rule impermissibly forbids. They cannot dispose of firearms from their personal collections for fear of being presumed "engaged in the business." ECF No. 16 at 43.  And compliance costs — as well as those accrued by persons seeking

13

licensure to avoid liability — "are unrecoverable because of the government–defendant's sovereign immunity from monetary damages[.]" *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 3:23-CV-1471-L, 2024 WL 1349307, at *9 (N.D. Tex. Mar. 29, 2024); *see also Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022) ("[C]omplying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs[.])"

Moreover, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021). And as this Court's analysis makes clear, Defendants' Final Rule is almost certainly violative of — at the least — the APA. As such, "both the balance of equities and the public interest weigh in favor of allowing orderly judicial review of the Rule before anyone shuts down their businesses or sends them to jail." *VanDerStok v. Garland*, 2023 U.S. App. LEXIS 26499, at *6 (5th Cir. Oct. 2, 2023).

## Conclusion

Defendants are **TEMPORARILY RESTRAINED** from enforcing the regulations — "Definition of 'Engaged in the Business' as a Dealer in Firearms" — published at 89 Fed. Reg. 28968 (April 19, 2024) (to be codified at 27 C.F.R. pt. 478) against Plaintiffs Texas, Jeffery Tormey, the Gun Owners of America, Inc., the Gun Owners Foundation, the Tennessee Firearms Association, and the Virginia Citizens Defense League, **through June 2, 2024**. Plaintiffs Louisiana, Mississippi, and Utah are excluded from the relief granted herein.

**SO ORDERED**.

May 19, 2024

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE